And we will hear argument next in Spoolstra v. United States. Counsel, you may proceed. Thank you. If you may please the court, counsel. I'm Jonathan Halley. I represent Albert and Spoolstra, the appellant in this case. Just prior to this hearing, this court requested an additional briefing with regard to jurisdiction.  That would be very helpful, counsel. Thank you. We're in kind of a difficult position as far as jurisdiction is what the government believes the level of burden or level of proof is required, identifying all the predecessors and interest in whether or not there's a claim that was ever raised by the government. I don't know if it's that complicated. It looks as though the reason why there might not be jurisdiction under the Quiet Title Act is that the Forest Service built the road from the highway to the federal lands a really long time ago, more or less maintained it. And it was in at least some use all the time since they built it. And it's been more than, I think, 12 years is the period. And of course, in fact, prior to that, I have. Am I missing something there? Why isn't that the answer? Well, I think you're missing something. The government did not construct the road. Everett Cox, who's a tenant on Ray Dufour's land, they leased 13 acres, which was a Cox sawmill site. He's the one who constructed the roadway when they built that bridge in 1950. And then the easement came about, or excuse me, built the bridge in 1948 after an original one washed out. It went down the stream a bit and built a new bridge. And then he punched in a new road that connected up by this junction where it ended. But regardless of who built it, was there a roadway connecting the highway to the federal land for more than 12 years? There was. There was. But the question is whether or not  We have an ambiguous easement. It doesn't have to be a claim. It just has to raise some cloud or some question about the title under Kingman Reef and a whole bunch of other cases for that matter, but certainly under Kingman Reef. This case is even stronger than that case because here the deed actually put the Dufours on actual notice that the government's claim was construction of a common highway connecting Road 475 to Route 14. What gets down to whether or not the claim would be ambiguous, that is one portion of the claim. But I think the overwhelming evidence, when you just look at the document itself, one would indicate that it would not go down to the road. But see, here's the thing. On jurisdiction, we're not concerned with what the truth is. What we're concerned with is whether a question existed there that put a cloud on the title. And why wasn't there actual and constructive notice going back to 1950? If all that it would take is the easement itself, if there's ambiguity in the easement, which could lead to a decision or the notion of going down to the river where this bridge was. If that was the notion, then they may be very well put on notice. However, when you look at the Exhibit A, which is attached to the judgments which identified the location of Road 475 as the judge identified it, a survey was done and that even established what that did establish, which is not raise a trial. I think it kind of learned of it at the time is the Dufers, which Alberts Fulcher ended up purchasing the property from them, didn't even own the land that went down to that bridge. Well, the Forest Service did. Pardon me? The Forest Service did. But there couldn't be a claim. Pardon me, Your Honor? The Forest Service doesn't need an easement over its own property. That wasn't the government's priority. I don't see why that particular argument matters. If my neighbor's driveway cuts a corner of my lot, I have to sue him within the requisite number of years, or my successor in title does if I buy and sell before the statute of limitations period expires, or else he has a prescriptive easement. Now, with the Quiet Title Act, instead of there just being a prescriptive easement, what there is is no consent by the sovereign to being sued. So the same concept becomes jurisdictional. And it seems to me it just doesn't matter whose land is whose or who built what if the public, people without Fulcher's permission, are using the road to go from the highway to the federal land from time to time for many years beyond the Quiet Title Act period, that's the end of it. No jurisdiction. What am I misunderstanding? Well, I think, I guess, it might be my misunderstanding, but as Judge Lodge has ruled. It's got to be mine. And this is your chance to educate me. Judge Lodge, as he identified, laid out the case law on it. And I submitted my supplemental briefing is that it can't be just any claim. If it's a vague or ambiguous claim, that's what the government's asserting, that's not putting a person on notice. Well, sure it is under Kingman Reef. Well, Kingman Reef has some pretty strong evidence that prior to in history, I mean, you had a presidential order that was issued regarding the government's understanding of what they own. And after that, you had additional statements that put everybody on notice. That was not an ambiguous assertion by the government. It was a very strongly worded assertion. Here we have a document on space that a person who provides the easement to the government, looking at the face where they actually identify a location by a drawing of where the easement was is, wouldn't reasonably believe that the government is actually believing that the easement would go down to a bridge. Looks like you can just look at it and see the road. Yes, you can. If you're looking on it, when they have the map attached to the easement or the right of way, it incorporated that document into the right of way description. And whoever drafted this or put in this map went ahead and went through the trouble of identifying certain markers. One of them is the river. Then you have the Alberta mining claim of the Bluebird. The line that depicts a starting point of the easement does not go down to the river. Anybody who's looking at this document trying to do it. Pardon me? But did the road? The road did, but this is identifying what the easement is. Well, the public is driving over the land on the road. What does it matter what the document says? Because we're disputing what the easement itself. And to be put on notice of whether or not the government is claiming that the easement goes down to the river, there has to be some reasonable belief that that's what the government is claiming. You have a Cox Sawmill site. If we're looking back in the 1940s, 1950s, the Cox Sawmill site, it's open for business, basically. They had no problem with people coming up on the property and driving up in the forest. They had no objections to that. Mr. Rachel Cox identified that. Just because people are utilizing the road with permission, I assume they would like the government occasionally to come by and grade the road. That'd be something that, given the time period, that'd be a good thing for them. Rachel Cox indicated that when they weren't present, I believe, grading the road, that the government would step in and occasionally do it. There are situations where there are roads that are used by the public, but where the owner wishes to avoid an easement. What they often do, I remember there's places in New York, maybe at Rockefeller Center, they close it one day every year. I can't see anything contrary to the government's hostile and open assertion of right here. Well, I guess we're looking at two different things. One is the court's decision on a prescriptive easement that they used it hostilely and open and against the- Well, counsel, the real problem is you have a 12-year window within which to sue the United States. And the United States is pointing out that its interest preceded the 12 years within which you had a chance to file. Can we focus on that? Why is that wrong? Dr. Spolstra had filed within 12 years that he owned the property. When you're looking at the predecessor- But the period of owning the property doesn't really matter, because you have to attack predecessor's rights. And that would go to whether or not that the rights, if there was somebody who put on a reasonable notice, the notice has to be something that's reasonable. I mean, that's what the courts look at. But it's open and notorious. You heard Judge Kleinfeld's comment. That would go to a prescriptive easement, whether or not they had continuous usage of the property. We're still focusing on statute of limitations against the sovereign. And it seems to me that for you to succeed, you have to be able to say that you were within 12 years of knowing that the United States had an adverse interest to you. I agree with that. And that notice has to be something reasonable. If you want to predate it back to 1950, and the open and notorious, and using it as a matter of right, would go to a prescriptive easement, that was a claim that the government raised against us. We didn't raise that against the government. We're looking at just- But that's a burden. You have to establish that you've got jurisdiction here. Jurisdiction over a cause of action. We asked the court to identify where the starting point of the 1950 easement was, because it's ambiguous on its face. What does it even matter? Suppose there was never a grant of easement, nothing whatsoever. A bunch of bullies from the Forest Service just drove a DA cat right across the ranch. And the government vehicles and the general public started driving across this road a half century ago. And there was never a single piece of paper that gave many right to. It seems to me that even in that circumstance, the 12-year window for a Quiet Title Act suit would have expired before Dr. Spolster even bought the place. And as for the reasonableness of notice, well, anyone can walk out of their house in the morning and say, what are those people doing driving a DA cat across my ranch and running pickup trucks across my ranch? That's the end of it. If that's happening for 12 years and the documents don't matter, why isn't that so? Because we don't have the conduct of that nature in this case. That is... No, here it looks like it was quite cooperative, actually. It was. The ranch owners were... The road was useful to them, too, but I don't see where it makes a difference. We'd have to be on notice that we do need to sort of... That the government is distributing a claim against us. If it was permissive, then I could see that it... And it appears to be permissive use of the road. As Rachel Cox had identified, that people used it, the public used it, the Forest Service used it. It did provide access to the forest, and there did not seem to be any problem with anybody using that road over the time. And the government's use wasn't continuous over the years. They, when needed, would grade the road, assist in grading. They did not build the road. They occasionally used graders to help grade it. I'm not sure what part of Road 475. Are there any documents that show that the use was permissive? For example, a lease to the government at a dollar a year or anything like that? No. Or a gate that's closed one day a year? No. There was just a... I can't see any assertion of right by Spoolster's predecessors entitled. There wasn't an activity that we could find that would put them on claim notice that the government is asserting a right to that section of property, going from the bridge to the burner. Looking at the activity and the easement itself, we were put on notice, a reasonable notice, that the government was claiming title or an interest in property going from the burner south, not down to the river, because that's what the document, that's what the easement was provided, would identify. There's no indication that they would ever be on notice that the government's claiming anything other than that to where they would need to file suit. That's where we get into the, in the Shultz case, if there's ambiguity in the government's claim. And as the judge pointed out, just prior to the suit, the government was claiming that, was claiming that the start of the easement is anywhere on the Cox Sawmill site, which is anywhere on the 13 acres. They changed that at trial and were focusing just on the bridge itself. So the government's changing its position on where the easement was located. And so, again, you have ambiguity. There has to be some clear assertion of claim, even just one. And we don't have that in this case to even start with. Thank you, counsel. Your time has expired. We'll hear from the government. Counsel, you may proceed. May it please the court, counsel. I'm Deborah Ferguson. I'm an assistant United States attorney from the District of Idaho. And this, the statute of limitations under the Quiet Title Act clearly bars this action. The evidence is overwhelming that more than 12 years have passed since this claim has accrued. Can I ask you, before you get into that, did this issue arise during when the matter was in front of Judge Lodge? Yes, yes, your honor, it did. I brought- But you never ruled on it. No, I brought, when the case first came to me, I filed a motion to dismiss based on the statute of limitations under the Quiet Title Act. That motion then was denied with leave to refile. Judge Lodge then was looking for what the- We never ruled on it precisely, but he ruled on the merits, in effect. No, in fact, he did. He denied the motion to dismiss with leave to refile. The motion was renewed. And in the interim, I also filed a motion for summary judgment. When he, in a joint order, covering both the motion for summary judgment and that motion to dismiss based on jurisdiction, that was ruled altogether in one order. And there, the judge held that there was jurisdiction and I would prevail on the motion for summary judgment insofar as Dr. Spoolster was claiming abandonment of these easements and that the matter would proceed to trial on the ambiguity issue of the deed, which it did. And what I contend here today is that our district court erred in three fundamental ways on that statute of limitations claim. The first and most important error was it ignored completely what the plaintiff's predecessors and interests knew or should have known. It just did not address that issue. And that's crucial. That's- What was the record on what the predecessors and interests knew or should have known about whether the claim was hostile? Well, these were recorded easements. And so what those predecessors and interests, the doofers, knew is they had, this is as clear as you can get, they sold easements across their land to the Forest Service. They had no subsequent disputes about the scope of those easements. And so I would contend that if a proper action were to be brought vesting jurisdiction in the court, it would have to have been within that window of opportunity 12 years after the purchase of those easements. When was the first easement sold to the Forest Service? It was 1950. And so 1962 was that period of time. The second easement was 1957. So what you're saying is that the government exceeded what the easement granted, they would have known by 1962. For the first easement, yes. Forest Service Road 475. There was a subsequent easement purchased from the doofers to provide additional access to the Nez Perce National Forest. That was in 1957. That was from Forest Service Road 451. And if we tack on 12 years from the date of purchase for these recorded easements, a property rights the United States paid for, for value, that was the window of time. Well, how did Judge Lodge go wrong on this particular issue? I believe there were several factors, the most crucial of which is he ignored what the predecessors in interest knew or should have known. He focused exclusively on what Dr. Spoolstra knew or should have known. Also, he was requiring the government... Is there a tacking issue here that needs to be explored? I'm not sure I understand. Well, we heard from the other side that as far as they were concerned, the statute doesn't start until Spoolstra takes ownership. Now, that's a rather unusual argument, but did Judge Lodge credit that, in effect? Well, yes, Judge Lodge was requiring that the court looked at what Dr. Spoolstra knew or didn't know. And he also, when he denied the initial motion to dismiss on jurisdiction, allowed us leave to refile that motion if we could prove two things. One, that there was at least one instance of uncontroverted use, or that Dr. Spoolstra knew or should have known. And I would contend those are the wrong tests. He never held Dr. Spoolstra to record knowledge or record notice, in effect. You can buy a piece of property and never look at the prior filings if that's what you want to do, but that doesn't protect you. Correct. I would assert that that was not considering what Congress required in this very limited waiver of sovereign immunity, that it's just not the most recent purchaser's knowledge, but it is predecessors in interest. And here the doofers gave up these property rights, wanted these easements. They were also for their benefit and were paid money for them. They were recorded shortly after they were purchased, so they were on record. They run with the deed. We don't have to get to what Dr. Spoolstra knew or should have known, but knowing now as we do that this ambiguity issue was ruled ultimately in the United States' favor in district court, Dr. Spoolstra did know of these easements he'd given. How could we possibly get there? Well, we don't need to get there. I don't mean need to. How can we under the Quiet Title Act? It explicitly, clearly states predecessors. Yes. I agree. The Supreme Court made that abundant and clear in Block v. North Dakota, and this court did last month in Kingman Reef. Just ordinary property law, isn't it? I mean, you tack on the predecessors and title. You can't destroy a prescriptive easement over your property by selling it to somebody. Well, and here we have above and beyond ordinary property law between two private individuals. A limited waiver of sovereign immunity as to when the United States people can attack claims that the United States has to property. Are all of these government contentions supported by evidence in the record? In other words, is the record complete to which would permit us to decide the jurisdictional question? Your Honor, it has never been in dispute that the United States has two recorded easements across this property, and I think on that basis alone, without more, the court can rule. I think the dispute was about whether they go all the way. Yes. The dispute was as to the scope of the easement, and a case that factually very similar. Forrester's argument was that the recorded easements don't go all the way from the highway to the Forest Service land. Is that right? Yes. Once he lost on the claims of abandonment of these easements, he was trying to block public access to the National Forest across his land. When his first argument was abandonment, and he lost on that, his next argument was, well, the easement starts in the middle of my property, so you can't get there from here. But we don't get there from here. We can't get to a claim about ambiguities about the easements or the scope of the easements because the court lacks jurisdiction to bring up the matter and consider it. And Judge Malloy out of a district court in Montana held in Kootenai County versus the U.S. was a situation very close to this factually where a ranch owner was disputing the scope of easements, United States easements, across their property. And he ruled that he couldn't hear about the claims about scope because the action was barred by the statute of limitations under the Quiet Title Act based on the predecessors in interest. The case I'm citing is 338 Fedsup 2nd, 1129. So I think this is a very clear case that absent jurisdiction under the Quiet Title Act, we can't get to any ambiguity issues. Is there anything further, counsel? Go ahead. Thank you. The case just argued will be submitted for decision.
judges: O'scannlain, Rymer, Kleinfeld